

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


RICK TWILLEAGER,

                      Plaintiff,

     v.

RDO VERMEER, LLC, doing business as
Vermeer Pacific, RDO EQUIPMENT CO.,
IKE MALSON,

               Defendant.

Civ. No. 10-1167-AC

FINDINGS AND
RECOMMENDATION

_____

ACOSTA, Magistrate Judge:

*Introduction*

    Plaintiff Rick Twilleager ("Twilleager") filed suit against Defendants RDO Vermeer, RDO

Equipment Co. ("RDO Equipment"), and Ike Malson ("Malson") (collectively "Defendants")

alleging claims for disability discrimination under state and federal law and for violations of the

FINDINGS AND RECOMMENDATION       1                             {KPR}

Family and Medical Leave Act ("FMLA") and the Oregon Family Leave Act ("OFLA"). Defendants move to compel arbitration of this matter and to stay proceedings pending arbitration. Twilleager opposes the motion on the grounds that the agreement to arbitrate is not enforceable as improperly formed and unconscionable; that Defendants breached the agreement to arbitrate; and that Defendants waived their right to seek arbitration.

For the reasons set forth below, the court should deny Defendants' motion to compel arbitration.

*Factual Background*

Twilleager's employment as a service technician with RDO Equipment Co. began on September 19, 2005. On September 15, 2005, prior to the start of his employment, Twilleager signed its "Employee Handbook Acknowledgment" form, which included an agreement to arbitrate employment disputes. (Malson Declaration ("Decl.") ¶ 4.). He signed a second acknowledgment form on October 3, 2005, by which date he had worked for RDO Equipment for several weeks. Both forms are entitled, in all capitals and boldface, and at the top center of the page, "**EMPLOYEE HANDBOOK ACKNOWLEDGMENT & EMAIL/VOICE MAIL USAGE POLICY.**" The forms, which each are one-page, single spaced documents, contain identical content and state in relevant part:

> [T]o provide for more expeditious resolution of certain employment-related disputes that may arise between RDO Equipment Co. and its employees, RDO Equipment Co. has instituted a mandatory mediation and arbitration procedure (the "RDO Equipment Co. Mediation and Arbitration Procedure" or the "Procedure") for all employees. Under the Procedure, certain disputes that may arise from your employment with RDO Equipment Co. or the termination of your employment must (after appropriate attempts to resolve your dispute internally through RDO Equipment Co. management channels) be submitted for resolution by non-binding mediation and, if necessary, mandatory arbitration. In agreeing to submit certain

FINDINGS AND RECOMMENDATION        2                                {KPR}

employment disputes for resolution by private mediation and (if necessary) arbitration, you acknowledge that this Agreement is given in exchange for rights to which you are not otherwise entitled -- namely, your employment as an RDO Equipment Co. employee and the more expeditious resolution of employment disputes. In exchange for your agreement to submit these disputes to mediation and (if necessary) binding arbitration, RDO Equipment Co. likewise agrees to the use of mediation and arbitration as the exclusive forum for resolving employment disputes covered by this Agreement. Hence, the parties shall be precluded from bringing or raising in court or another forum any dispute that was or could have been brought or raised under the procedures set forth in this Agreement.

(Malson Decl., Ex 2 at 1.)

The actual language governing arbitration is contained in the separate employee handbook. (Malson Decl. ¶ 5.) The policy states that the arbitration agreement extends to "any claim or controversy arising out of or relating to the employment relationship with RDO Equipment Co." including termination. (Malson Decl., Ex. 3 at 2.) The policy also specifies the claims covered, which include discrimination claims, claims arising under the FMLA, "and/or claims for violation of any federal, state, or other Governmental law, statute, regulation, or ordinance, and whether based on statute or common law[.]" *Id.* at 3. The agreement requires that the parties engage in a sequential process of informal resolution, followed by non-binding mediation, followed by binding arbitration. *Id.* at 3-4. Applicable arbitration rules are those set out in the arbitration agreement as well as American Arbitration Association ("AAA") rules, with those in the arbitration agreement taking precedence where they are in conflict with the AAA rules. *Id.* at 4. The agreement calls for mediation and arbitration to take place in Fargo, North Dakota, unless the parties mutually agree otherwise, and provides that RDO Construction will pay administrative costs and the arbitrator's fees, but will not pay other expenses, specifically attorney fees. *Id.* The 2005 and the 2010 version of the handbook are identical. (Malson Decl. ¶ 5.)

On June 29, 2009, Twilleager filed a BOLI complaint alleging violations of the Oregon Family Leave Act ("OFLA") and the Americans with Disabilities Act ("ADA") arising from events in May and June of that year. (Smith Decl., Ex. A.) Specifically, the BOLI complaint states that, upon returning from medical leave, Twilleager's return to work was conditioned on continued treatment and a release of his medical information to RDO Equipment. Twilleager refused to agree to that condition and was sent home; RDO Equipment later informed Twilleager that, if he did not agree to these terms, his employment would be terminated. Twilleager responded that his rights were being violated, but RDO Equipment continued to insist that he agree to its conditions of continued employment.

On August 11, 2009, Twilleager's attorney, Kerry M. L. Smith ("Smith"), sent a letter to Malson regarding Twilleager's wage claims against RDO Equipment and referring to the claims pending before BOLI. Counsel for Defendants, Paul Noah ("Noah"), emailed Smith on September 3, 2009, requesting verification of Twilleager's treatment plan by a medical provider in order to allow Twilleager to return to work. Smith responded by email on September 9, 2009, attaching a complying letter from Twilleager's physician, but clarifying that, in doing so, Twilleager was not waiving any claims associated with his return to work or the release of his medical information. (Smith Decl. Ex. D.) Noah responded to Smith's email, stating that Twilleager could return to work and should contact Malson. (Smith Decl. Ex. E.)

Twilleager filed a second BOLI complaint on January 19, 2010, again alleging violations of OFLA and the ADA, based on events taking place in November 2009 through January 2010. Essentially, Twilleager again became sick on November 10, 2009, and was unable to work until December 1, 2009. Twilleager informed RDO Equipment of this on four occasions in November.

FINDINGS AND RECOMMENDATION        4                              {KPR}

After being informed of Twilleager's intent to return to work, RDO Equipment contacted him and informed him that he could not return to work until he completed FMLA paperwork and submitted a medical release. Twilleager did so and returned to work. On January 6, 2010, Twilleager was again unable to work and reported this to RDO Equipment on three occasions. On the final occasion, RDO Equipment terminated Twilleager.

In June 2010, BOLI issued Notices of Substantial Evidence Determination with respect to both of Twilleager's BOLI complaints. On June 24, 2010, Smith sent a letter to Noah, communicating Twilleager's offer to mediate his claims against RDO Equipment, as well as a good faith offer of $300 to go toward the mediation costs. (Smith Decl. Ex. K.) The letter also stated that Smith was not aware of the existence of an arbitration agreement, but requested a copy in the event there was such agreement between the parties. On June 29, 2010, BOLI issued a Notice of Right to File a Civil Suit with respect to Twilleager's first BOLI complaint. (Smith Decl. Ex. L.)

On July 8, 2010, Smith sent a letter to Laura Jordan ("Jordan"), of counsel for Defendants, setting forth Twilleager's proposed settlement offer and reasserting his desire to mediate his claims. Smith again requested a copy of the arbitration agreement, the existence of which had apparently been disclosed to Smith after he authored and sent his previous letter to Noah. Having received no response from Jordan, Smith sent another letter on July 21, 2010, seeking an answer as to whether Defendants wished to proceed with arbitration or if Twilleager should pursue traditional litigation. Again, on August 9, 2010, Smith emailed Jordan seeking the same information and giving Defendants notice that Twilleager would file litigation on August 15, 2010, the filing deadline. (Smith Decl. Ex. O.) That same day, Smith apparently received a telephone call from Richard Meneghello ("Meneghello"), also of counsel for Defendants, stating that Defendants would enter

FINDINGS AND RECOMMENDATION          5                                    {KPR}

mediation only if Twilleager reduced his settlement demand.  Smith sent a letter restating the demand and seeking a counteroffer.

Twilleager received a second Notice of Right to File a Civil Suit with respect to his second BOLI complaint on August 17, 2010.  Jordan emailed Smith to express Defendants' desire to mediate and attaching a copy of the mediation agreement.  A mediation with Nancy Maisano, a professional mediator who formerly served in that role for the EEOC's Seattle office, was scheduled for September 16, 2010. On September 10, 2010, Defendants produced the requested documentation to Twilleager.

Malson, Twilleager, and counsel for both were present at the mediation.  Mediation was not successful and, as agreed, Twilleager paid $300 and Defendants paid approximately $3,000 toward the mediation cost.  (Jordan Decl. Ex. 2.)  After Twilleager filed suit in this court, on September 27, 2010, Meneghello attempted to accept an earlier offer to arbitrate, by letter, and offered to pay all arbitration costs.  When Jordan spoke to Smith about this, Smith stated that Twilleager would not proceed with arbitration because the arbitration agreement was invalid.  (Jordan Decl. ¶ 2.)

*Legal Standard*

The Federal Arbitration Act ("the FAA") establishes the validity and enforceability of agreements to arbitrate disputes arising out of contract, "save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (2008).  As a general principle, the Supreme Court has held that arbitration agreements in employment contracts are valid and enforceable. *See Circuit City Stores v. Saint Clair Adams*, 532 U.S. 105, 119 (2001) (the exemption in the FAA for employment contracts extends only to those of transportation workers).

"Evaluating a motion to compel arbitration requires a court to determine: '(1) whether a

valid agreement exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'"

*Simpson v. Lifestyles, LLC*, Case No. 07-1251-HA, 2008 WL 1882838, at *2 (D. Or. Apr. 24, 2008)

(quoting *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If the

agreement is valid and encompasses the dispute, the court must "enforce the arbitration agreement

in accordance with its terms." *Id.* Furthermore, there is "a presumption in favor of arbitrability."

*Livingston v. Metropolitan Pediatrics, LLC*, 234 Or. App. 137, 147, 227 P.3d 796 (2010).

An otherwise valid arbitration clause may be found unconscionable and, thus, unenforceable.

This is a question of law to be determined by the court and is "based on the facts in existence at the

time the contract was made." *Id.* at 151 (citing *Best v. U.S. National Bank*, 303 Or. 557, 560, 739

P.2d 554 (1987)).    Contract terms are evaluated for both procedural and substantive

unconscionability, and the party asserting it bears the burden of demonstrating unconscionability.

*Simpson*, 2008 WL 1882838, at *9.

## Discussion

Defendants move for arbitration on the ground that the parties entered into a valid arbitration

agreement and that Twilleager even made a written demand for arbitration at one point, but

subsequently initiated this litigation without pursuing arbitration. Twilleager responds that he did

not knowingly enter into an arbitration agreement, the agreement itself is unconscionable, and that

Defendants both breached the agreement and waived their right to compel arbitration. The court will

address each ground in turn.

I.    Knowing Entry into Arbitration Agreement

Twilleager argues that he never knowingly entered into an arbitration agreement with

Defendants and cannot be bound by the acknowledgment form he did sign, for several reasons. First,

the acknowledgment form was not identified as an agreement and, in acknowledging the terms contained in the handbook, Twilleager did something short of agreeing to the terms contained in the handbook.    Second, the acknowledgment did not identify the handbook as the source of the arbitration agreement, or otherwise direct Twilleager to the location of the actual terms of the arbitration agreement.    Third, the acknowledgment referred to arbitration of "certain disputes," but did not further identify the disputes subject to arbitration and, thus, failed to explicitly inform Twilleager that he was giving up his right to vindicate his civil rights in a court of law.    Fourth, the acknowledgment stated that the handbook was not a legal document.    Finally, Defendants did not themselves identify the arbitration agreement until January 3, 2011, long after this dispute arose. Twilleager asserts that, for the above reasons, he cannot be held to have agreed to the arbitration provision that Defendants currently assert.

Defendants' reply does not separately address this specific argument, though it does touch on these issues in the section devoted to unconscionability.[1]    Defendants argue that, by way of the acknowledgment form, Twilleager was "informed" of the requirement that employment disputes be mediated and then arbitrated and, thus, had an opportunity to make a meaningful choice to enter into that agreement.    Defendants argue further that Twilleager twice signed the acknowledgment, once before and once after his employment commenced, further bolstering his agreement to the mediation

_____

[1] This issue is closely related to the "surprise" element of procedural unconscionability and could potentially be addressed as such.  In the court's view, however, it is a threshold issue that should be resolved prior to addressing unconsionability, and it hinges on whether the acknowledgment refers specifically to arbitration.  Where the acknowledgment does not so refer, the agreement lacks a fundamental element of contract formation and is presumptively invalid.  Where the acknowledgment does specifically refer to an arbitration agreement, the court must proceed with unconsionability analysis and, in doing so, consider the acknowledgment form and the policy set forth in the handbook as a whole.

and arbitration provisions.

This circuit has held that "a knowing agreement to arbitrate disputes, and waive a judicial determination, is required under federal civil rights statutes and parallel state statutes." *Lindgren v. Public Storage*, 290 Fed. Appx. 971, 972 (9th Cir. 2008) (citing *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 761 (9th Cir. 1997)).  The Ninth Circuit has described what circumstances constitute "knowing" when the question is whether an employee has entered into an arbitration agreement:

> An employee has not knowingly agreed to arbitrate when the forms he signs fail to notify him that an employee handbook contains an arbitration agreement, or that his signature on the forms require him to surrender his statutory right to a judicial forum for his civil rights claims.  Even though an employee acknowledges receipt of an employee handbook and agrees to read and understand the contents of it, he has not knowingly waived his right to a judicial determination.

*Id.*  This typically occurs where an acknowledgment form completely fails to mention the existence of an arbitration clause. *See Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1155 (9th Cir. 1998) ("The Acknowledgement did not notify Kummetz that the Booklet contained an arbitration provision, nor did it mention or imply anything about employment-related disputes, civil rights statutes, or waivers of remedies.")  That said, "if the acknowledgment specifically directs the employee's attention to the arbitration clause in the handbook, then the arbitration agreement can be given effect." *Briede v. 24 Hour Fitness, USA, Inc.,* Case No. 10-649-HA, 2010 WL 4236929, at *4 (D. Or. Oct. 21, 2010) (citing *Kummetz v. Tech Mold, Inc.*, 152 F.3d at 1155-56.

Here, Twilleager was presented an acknowledgment form that required him to waive his right to a judicial forum for "certain" employment disputes.  It did not inform him that these disputes include those arising from violations to his civil rights as protected under state and federal law.

FINDINGS AND RECOMMENDATION          9                                    {KPR}

Further, the acknowledgment suffers from a deficiency similar to the rejected acknowledgment in *Kummetz*: it referenced an arbitration provision in a handbook that it also expressly denied constituted a contract. *Compare* Malson Decl., Ex 2 at 1 ("Furthermore, I acknowledge that this handbook is neither a contract of employment nor a legal document[.]") *with Kummetz*, 152 F.3d at 1155 ("The Acknowledgement stated: 'I understand and agree that this Booklet in no way constitutes an employment contract and that I remain an at-will employee.'"). However, unlike the rejected acknowledgment in *Kummetz*, the acknowledgment here included an express statement that RDO Equipment had "instituted a mandatory mediation arbitration procedure . . . for all employees," specifically stated that "certain employment-related disputes" would be resolved by "mandatory arbitration," and clearly informed that "the parties shall be precluded from bringing or raising in court or another forum any dispute that was or could have been brought or raised under the procedures set forth in this Agreement." (Malson Decl., Ex 2 at 1.)

The acknowledgment here displays several failings, to be sure. But, the case law governing the question of whether an arbitration agreement has been knowingly entered into requires little more than an acknowledgment which includes language that refers to binding arbitration and notifies the employee that he or she is precluded from bringing a lawsuit for employment claims. The acknowledgment here satisfies those basic requirements. Thus, the acknowledgment form suffices as notice of RDO Equipment's mandatory arbitration policy.

II.     Unconscionability

    *A.     Procedural Unconscionability*

In determining whether an arbitration clause is procedurally unconscionable, a court focuses on the twin factors of oppression and surprise. *Sprauge v. Quality Restaurants Northwest, Inc.*, 213

FINDINGS AND RECOMMENDATION          10                              {KPR}

Or. App. 521, 525, 162 P.3d 331 (2007) (citations omitted). "'Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the terms.'" *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553, 566, 152 P.3d 940 (2007) (quoting *ACORN v. Household Intern., Inc.*, 211 F. Supp. 2d 1160, 1168 (N.D. Cal. 2002)). Oregon courts have held that "a contract of adhesion – an agreement presented on a take-it-or-leave-it basis – reflects unequal bargaining power, but the adhesive nature of a contract standing alone is insufficient to render an agreement procedurally unconscionable." *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1094 (9th Cir. 2009).

Twilleager contends that the arbitration provision in question is procedurally unconscionable as it resulted from the parties' unequal bargaining power and contains elements of surprise. The parties' positions were unequal because the agreement was presented as a condition of Twilleager's employment and then continued employment, and because Defendants were not required to give up their ability to litigate claims in a court of law. Defendants respond that the agreement suffers from neither unequal bargaining power nor surprise. Twilleager was given time and opportunity to review the agreement and make a meaningful choice to agree, and the acknowledgment form was "easy to read," contained in a single page, and separated into topical paragraphs. Further, the section in the handbook was identified by a bolded heading. Finally, Defendants rely on the contract law principle that a party is presumed familiar with the contents of a document to which they attach their signature.

The agreement is procedurally unconscionable. First, RDO presented the agreement as a "take it or leave it" proposition, initially as a condition of hire and again as a condition of continued employment. Furthermore, the acknowledgment is misleading as to its content and effect. Its title,

FINDINGS AND RECOMMENDATION        11                                    {KPR}

"**EMPLOYEE HANDBOOK ACKNOWLEDGMENT & EMAIL/VOICE MAIL USAGE POLICY**," contains no reference to "arbitration," "arbitration agreement," or to an agreement of any kind. Instead, it informs the recipient that he or she, by signing, is only confirming receipt of an employee handbook – which the acknowledgment itself states "is neither a contract of employment nor a legal document[.]" In addition, the text of the acknowledgment appears all in the same size font, with two exceptions: one, the title, which is in larger size font, is bolded, and is all capitalized; and two, a subheading entitled "E-MAIL AND VOICE MAIL USAGE POLICY," which appears in all capitals. Nothing about the acknowledgment draws the reader's specific attention to the binding arbitration language it contains. To the contrary, the document gives typeface emphasis to its title and to the email/voice mail subheading in a way that draws the recipient's attention away from the very language Defendants seek to enforce here.

That the acknowledgment merely identifies the arbitration policy and requires the employee to look elsewhere for its actual terms adds yet another shielding layer in discerning the specifics of the arbitration policy. And, the handbook section devoted to the mediation and arbitration policy is, again, not set off in a manner calculated to draw the employee's attention to this critical language. The section appears well into the 52-page handbook and is preceded by a subheading identical in appearance to the other subheadings in the handbook.

In sum, the balance of factors weighs in favor of a finding of surprise in the procedural unconscionability context. Accordingly, the court finds that the agreement is procedurally unconscionable.

*B.    Substantive Unconscionability*

"Substantive unconscionability arises from a substantial disparity in bargaining power,

FINDINGS AND RECOMMENDATION    12    {KPR}

combined with terms that unreasonably favor the powerful party. But Oregon courts are 'reluctant to declare contractual provisions per se unconscionable, even among parties of unequal bargaining power.'" *Briede,* 2010 WL 4236929, at *4 (citing and quoting *Livingston*, 234 Or. App. at 806).

"An arbitration agreement is unenforceable under the FAA if it denies a litigant the opportunity to vindicate his or her rights in the arbitral forum." *Vasquez-Lopez*, 210 Or. App. at 573 (citing *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)). Thus, where the cost provisions of an arbitration agreement effectively foreclose review of a plaintiff's claim, that agreement is substantively unconscionable. "Under Oregon law, an arbitration agreement requiring an employee to pay arbitrator's fees is invalid." *Derrick v. Santa Fe Natural Tobacco Co.*, Civil No. 07-631-HA, 2007 WL 2994598, at *3 (D. Or. Oct. 12, 2007) (quoting *Torrance v. Aames Funding Corp.*, 242 F. Supp. 2d 862, 874 (D. Or. 2002)). However, the fact that an arbitration clause is silent on fee allocation does not alone render it unconscionable. *Id.* at *10.

Twilleager argues that the arbitration agreement is unconscionable on several grounds. First, the arbitration requirement applies only to employment-related claims and, thus, did not apply with equal force to RDO Equipment. Second, Defendants' position is inconsistent with the statement in the acknowledgment form that the handbook is not a legal document. Third, the allocation of expenses provided for in the agreement could expose Twilleager to significant expense, such as to preclude him from bringing claims against Defendants. Fourth, the agreement calls for arbitration to take place in North Dakota, as well as for the application of North Dakota law. Finally, the confidentiality provision is extremely broad.

Though they do not dispute that the arbitration clause applies unilaterally to claims brought by employees, Defendants respond that an arbitration provision that controls claims brought only by

FINDINGS AND RECOMMENDATION        13                                    {KPR}

an employee is not presumptively unconscionable. Defendants rely on *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610 (2007), where the court stated: "Given the public policy favoring arbitration as a forum for dispute resolution, and Supreme Court case law recognizing the adequacy of that forum, we are reluctant to conclude that a unilateral agreement to arbitrate is *inherently* unconscionable in all cases." *Id.* at 625. Rather, Oregon courts evaluate such arbitration provisions on a case-by-case basis to determine "whether, given the unequal bargaining power, the effect of the arbitration clause makes the parties' respective obligations so unbalanced as to be unconscionable." *Id.* In making this determination, the court must look at the effect of the provision, rather than a one-sided application. *Id.* at 623. In *Motsinger*, the court concluded that such a provision did not render the agreement unconscionable. After reviewing the terms of the agreement and noting that they provided for an arbitration process remarkably similar to standard litigation, the court wrote:

> Equally relevant, however, is what the arbitration clause does *not* do. Most importantly, the arbitration clause does not impose any limits on the type or amount of recovery that can be awarded by the arbitrator. It does not exclude punitive or statutory damages or preclude an award of attorney fees when otherwise provided by law. . . . In effect, plaintiff is entitled to all of the same remedies–and most of the same procedural protections–as defendant; she simply must bring her claims in a different forum.

*Id.* at 626. Accordingly, the court found that the one-sided arbitration provision did not render the agreement "*unreasonably* favorable to the party with greater bargaining power[,]" and held the agreement enforceable. *Id.* at 626-627.

Here, by contrast, the arbitration provision describes requirements that impose a heavy burden on the employee. First, it requires arbitration in North Dakota, a considerable distance from Portland. That distance imposes commensurate unnecessary expense on an Oregon employee who chooses to arbitrate: the employee must travel to North Dakota to arbitrate, must pay for food and

FINDINGS AND RECOMMENDATION        14                          {KPR}

lodging while there, must also pay for his or her attorney to travel to and stay in North Dakota, and must pay for Portland-based witnesses to do the same. Although the arbitration provision allows the parties to mutually agree to a different location for arbitration, the effect of that alternative is to give RDO Equipment an effective veto over any venue other than North Dakota. That discretion may be used in a particular case to make more financially onerous and even impracticable the employee's task of arbitrating employment-related claims.

Second, the arbitration agreement requires application of North Dakota law which, combined with the other factors discussed herein, adds to the employee's burden. By itself, a choice-of-law provision generally not unconscionable. However, its mandatory use in resolving employment-related disputes likely will require the employee's attorney to deal with a body of law unfamiliar to him or her, because the employee's attorney very likely will not be from North Dakota, as is true in this case. To become familiar with North Dakota law, then, the employee's attorney would need to spend time and effort to learn it; the alternative for the employee is to hire a North Dakota lawyer to represent the employee, which presents time, effort, and expense of a different kind.

Third, the arbitration agreement provides that outside of the administrative costs and arbitrator fees, "[a]ll other costs and expenses associated with the arbitration, including, without limitation, the party's respective attorneys' fees, shall be borne by the party incurring the expense." (Malson Decl., Ex. 3 at 5.) This aspect of the arbitration provision is enough by itself to render the agreement unconscionable, because it requires the employee simply to relinquish a statutory right to attorney fees. Here, Twilleager asserts claims under section 1983, which claims could allow him to recover his attorney fees from Defendants if he prevailed: "The court is authorized under 42 U.S.C. § 1988(b) to award reasonable attorney fees to the prevailing party in a § 1983 action."

*McGuire v. Ciecko*, Case No. 08-1098-AC, 2008 U.S. Dist. LEXIS 111393, at *14 (D. Or. Nov. 10, 2010). Thus, an arbitrator would not be permitted to award Twilleager his attorney fees if he prevailed in his action, a right he would have in a court action that involved the identical section 1983 claim.

At hearing, Defendants cited a recent decision of this court, *King v. Town & Country Chrysler, Inc.*, Civ. No. 10-1237-AC, 2011 U.S. Dist. LEXIS 28930 (D. Or. Mar. 21, 2011), wherein the court declined to evaluate the financial impact of arbitration on the plaintiff for lack of evidence as to the plaintiff's financial situation or the likely cost of the arbitration proceedings. As Defendants pointed out, the court lacks such evidence in this case, as well. There is a qualitative difference, however, between the analysis of the cost provisions in *King*, and the court's task in this matter. In *King*, the arbitration agreement was governed by the Oregon Arbitration Act ("OAA") and, accordingly, its cost provisions. The court was not called upon to evaluate whether the cost provision was unconscionable because the provisions of the OAA are presumptively conscionable, though theoretically, given a particular evidentiary showing, their application in a given case may not be. Without the relevant evidence, the court was unable to conclude whether or not the cost provisions of the OAA would have had a prohibitive effect. Here, the court is evaluating the cost provisions set forth by Defendants which it concludes, as a matter of law, are unconscionable. Thus, the supporting evidentiary showing is unnecessary.

Taken together, the fact that the arbitration agreement requires arbitration in a distant state and allows RDO Equipment to unilaterally prevent arbitration at a different location, deprives the employee of attorney fees, and exposes the employee to his or her own attorney fees and other costs not explicitly tied to the arbitration, renders the arbitration agreement substantively unconscionable.

FINDINGS AND RECOMMENDATION        16                              {KPR}

Accordingly, the court concludes that the agreement suffers from both procedural and substantive unconscionability and is therefore unenforceable.

III.    Breach of Arbitration Agreement

Twilleager also argues that Defendants breached its own dispute resolution policy and, therefore, cannot now invoke said policy against him. He alleges three breaches on Defendants' part: first, failing to have a corporate decision-making authority present at the mediation with sufficient settlement authority; second, failing to timely respond to Twilleager's request to arbitrate; and, third, conditioning their participation on the amount of Twilleager's settlement offer. Defendants respond that the representative present at the mediation, Malson, had as much settlement authority as any of Defendants' representatives, and cites Twilleager's lack of personal knowledge as to the inner workings of Defendants concern. Defendants also respond that they participated in mediation with Twilleager as soon as it was practicable, i.e., within one month of Twilleager's withdrawal of his BOLI complaints. Prior to that time, Defendants contend, the claims could have resolved at the administrative level, obviating the need to proceed to mediation. Defendants also argue that conditioning participation in the mediation on Twilleager submitting a "reasonable" settlement demand was not a breach and was on par with Twilleager's demand that Defendants produce his personnel and medical files.

For a breach of contract claim governed by Oregon law, the plaintiff must establish "the existence of a valid contract and the breach thereof." *Pendleton Grain Growers v. Pedro*, 271 Or. 24, 28, 530 P.2d 85 (1975). The plaintiff must also "plead and prove either substantial performance on his part or a valid excuse for his own failure to perform." *Aurora Aviation, Inc. v. AAR Western Skyways, Inc.*, 75 Or. App. 598, 602, 707 P.2d 631 (1985) (citing *Wassburger v. American Scientific*

FINDINGS AND RECOMMENDATION        17                              {KPR}

*Chemical, Inc.*, 267 Or. 77, 82, 514 P.2d 1097 (1983)).

Twilleager's argument here assumes the validity of the mediation and arbitration agreements but asks the court to find that RDO Equipment breached those agreements. Twilleager must establish their breach. The court notes first that the employee handbook arbitration provision requires that "[i]f efforts at informal resolution fail, disputes arising under this Agreement must first be submitted for non-binding mediation before a neutral third party." (Malson Decl., Ex. 3 at 3.) The policy does not state any conditions precedent to mediation, outside of having previously failed to resolve the dispute via internal efforts, and specifies no timeline within which these steps must be undertaken and completed.

Twilleager's argument on these points ultimately is unavailing. By conditioning mediation on what Defendants deemed a "reasonable" settlement demand, they inserted into the agreement a condition precedent which the agreement does not contain. Had Defendants maintained this position and prevented mediation, Twilleager's position might well have merit. But those are not the facts here. Instead, the parties did mediate, but the mediation proved unsuccessful in resolving the parties' dispute. Further, the record is insufficient to establish that Malson was not vested with same settlement authority as Noah, with whom Twilleager's counsel had communicated prior to the mediation, would have had if he had attended the mediation. On this point, Defendants' evidence shows that the two representatives had identical settlement authority.

For these reasons, the court finds that, even if the mediation and arbitration agreements were legally binding on the parties, Defendants did not breach their provisions.

IV.    Waiver

Twilleager argues that Defendants waived their rights to invoke the arbitration clause by

failing to produce, and even concealing, the arbitration policy outlined in the handbook; refusing to

mediate without what they deemed a "reasonable" settlement demand from Twilleager; failing to

promptly respond to Twilleager's demand for arbitration.

The doctrine of waiver in the context of arbitration was described by the Ninth Circuit in

*United States v. Park Place Assocs.*, 563 F.3d 907 (9th Cir. 2009):

> The right to arbitration, like any other contract right, can be waived. However, we
> have emphasized that waiver of the right to arbitration is disfavored because it is a
> contractual right, and thus any party arguing waiver of arbitration bears a heavy
> burden of proof. To demonstrate waiver of the right to arbitrate, a party must show:
> (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with
> that existing right; and (3) prejudice to the party opposing arbitration resulting from
> such inconsistent acts.

*Id.* at 921 (internal citations and quotation mark omitted).

The Oregon Court of Appeals recently held that under the FAA issues of waiver are to be

decided by the arbitrator and not the court. *See Citigroup Smith Barney v. Henderson*, Case No.

A139707, 2011 Or. App. LEXIS 180, at *12 (Feb. 23, 2011) ("But, where the arbitration agreement

is silent as to whether the court or the arbitrator should decide issues of waiver, the FAA supplies

a default rule: It is presumed that waiver issues are to be decided by the arbitrator." (citing *Howsam*

*v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002))). As the parties' arbitration agreement is

silent on this issue and, thus, an issue for an arbitrator to decide, the court declines to rule on the

issue of waiver.

### Conclusion

For the reasons stated, Defendants' Motion to Compel Arbitration and Stay Proceedings

(#16) should be denied.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due April 15, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 1st day of April, 2011.

JOHN V. ACOSTA
United States Magistrate Judge

FINDINGS AND RECOMMENDATION        20                                    {KPR}